IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00775-RBJ

SHAWN WILLIAM BRINKEY,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING DENIAL OF BENEFITS**

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Shawn William Brinkey's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

**STANDARD OF REVIEW**

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561

F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may also be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

Shawn William Brinkey was born in 1968 and is currently 49 years old. R. 87. He filed for disability in 2014 at the age of 44, alleging disability due to autism with an onset date of 2002. *See, e.g.*, R. 87, 90–91. Mr. Brinkey has also asserted mental impairments including panic disorder with agoraphobia, dependent personality disorder, and a learning disability. ECF No. 13 at 6. Records from his high school indicate that Mr. Brinkey was in special education classes and had emotional difficulties, but he was deemed to have made improvements and was moved to general education classes by the end of high school. R. 284–307. Mr. Brinkey graduated high school and went on to work for ten years as a janitor and painting trains at a toy train factory, where his father also worked. R. 15, 26, 45–47, 203, 213, 314. When the factory closed Mr. Brinkey lost his job, and he has been unemployed since. R. 46–47, 218.

**A. Procedural History.**

Mr. Brinkey filed a claim for disability insurance benefits and supplemental security income benefits on February 21, 2014. R. 21. Mr. Brinkey alleged disability beginning January 1, 2002 with respect to his Title II claim, and beginning February 21, 2014 for the purposes of his Title XVI claim. *Id.*; *see also* ECF No. 13 at 4. His claims for disability benefits were denied on September 4, 2014. R. 21. Mr. Brinkey then requested a hearing, which was held before Administrative Law Judge ("ALJ") Debra J. Denney on January 21, 2016. R. 14. The ALJ issued a decision denying benefits on February 25, 2016. R. 14, 18–20, 25–31. The

Appeals Council denied Mr. Brinkey's Request for Review on January 31, 2017, rendering the ALJ's determination the final decision of the Commissioner for purposes of judicial review. R. 1–5. Mr. Brinkey filed a timely appeal in this Court.

**B. The ALJ's Decision.**

The ALJ issued an unfavorable decision at step two in the SSA's standard five-step process. First, the ALJ found that Mr. Brinkey had not engaged in substantial gainful activity since his alleged onset date of January 1, 2002. R. 23. At step two, the ALJ found that while Mr. Brinkey's alleged impairments of autism and a learning disability were not medically determinable, Mr. Brinkey had the medically determinable impairments of panic disorder with agoraphobia and dependent personality disorder, but that these impairments were not severe. R. 24. As a result, the ALJ concluded that Mr. Brinkey was not disabled, and she did not proceed to the remaining three steps.

## DISCUSSION

Mr. Brinkey alleges that the ALJ erred in three ways when she concluded at step two that he did not have a severe impairment. First, he argues that she erred as a matter of law in failing to find that Mr. Brinkey met his *de minimis* burden at step two; second, he argues that the ALJ impermissibly based her findings on her lay judgment rather than on the judgment of the medical experts; and third, he argues that the ALJ failed to base her findings about the credibility of Mr. Brinkey's and his mother's testimony on substantial evidence. ECF No. 13 at 5. Each argument will be considered in turn.

**A. Mr. Brinkey's *De Minimis* Burden.**

Mr. Brinkey's threshold argument is that he met the *de minimis* burden imposed on claimants at step two. At this step in the SSA's sequential process a claimant is required to show

3

that he suffers from a severe impairment or that the combined effect of his impairments is severe. The claimant must demonstrate that his impairment is of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," regardless of whether that work exists near him or whether he would actually be hired if he applied. 42 U.S.C. § 423(d)(2)(A). "The words of this provision limit the Secretary's authority to grant disability benefits, not to deny them." *Bowen v. Yuckert*, 482 U.S. 137, 148 (1987).

The claimant bears the burden at step two of demonstrating that his impairment(s) is severe because it "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "The ability to do basic work activities is defined as 'the abilities and aptitudes necessary to do most jobs.'" *Yuckert*, 482 U.S. at 141 (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). To prevail at step two, a claimant need only make a "*de minimis* showing" of medical severity, meaning that he shows "that his impairments would have more than a minimal effect on his ability to do basic work activities." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). However, this showing requires demonstrating "more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). If the claimant is unable to make a *de minimis* showing of severity, "he is not eligible for disability benefits, and the review process ends at step two. *See Williams*, 844 F.2d at 751.

"When confronted with a claim of mental impairment, the ALJ is required by regulation to apply a 'special technique'" to determine the severity of the mental impairment. *Grotendorst v. Astrue*, 370 F. App'x 879, 882 (10th Cir. 2010) (citing 20 C.F.R. § 404.1520a). First, the ALJ must "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§

404.1520a(b)(1), 416.920a(b)(1).[1] An impairment must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.* at §§ 404.1508, 416.908.

Next, once the ALJ has found a medically determinable impairment, she must rate the degree of functional limitation resulting from the impairment in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ's ratings are then used to determine the severity of the mental impairments. *Grotendorst*, 370 F. App'x at 882. An ALJ's decision must "incorporate the pertinent findings and conclusions based on the technique," and must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

In this case, the ALJ first determined that while Mr. Brinkey had the medically determinable mental impairments of anxiety disorder with agoraphobia and dependent personality disorder, he did not have the medically determinable mental impairments of autism or learning disability. R. 24. She explained that the diagnosis of autism was not supported by medically acceptable clinical and laboratory diagnostic techniques, and that Mr. Brinkey's records did not indicate any diagnosis of a learning disorder. *Id.* Next, according to the technique outlined above, the ALJ evaluated the intensity, persistence, and limiting effects of

---

[1] Several of the Social Security regulations cited throughout were amended effective January 17, 2017 or March 27, 2017. Where, as here, an ALJ's decision is the final decision of the Commissioner, the reviewing court applies the law in effect at the time of the ALJ's decision. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012) ("We refer to the regulations in effect at the time of the ALJ's decision."). Accordingly, citations to the regulations herein are made in reference to the versions of those sections in effect when the ALJ made her decision on February 25, 2016.

Mr. Brinkey's symptoms caused by the impairment(s) to determine the extent to which they limit Mr. Brinkey's functioning.  R. 25–30.

Mr. Brinkey argues that the ALJ erred by denying his claim at step two because he met his *de minimis* burden of proving he had the severe impairments of autism, anxiety disorder with agoraphobia, learning disability, and dependent personality disorder.  ECF No. 13 at 10–11.  The Commissioner counters that Mr. Brinkey failed to meet his *de minimis* burden given his "lack of treatment for any medical condition, prior employment, self-described social and work-related capabilities, and, most importantly, the lack of objective medical findings that might support a finding of significant mental functional limitations."  ECF No. 14 at 12.  I agree.

For reasons that will be further developed below in the context of the medical opinion evidence and credibility of Mr. Brinkey's and his mother's testimony, I find that the ALJ properly found that Mr. Brinkey's alleged autism and learning disability did not constitute medically determinable impairments since there was no supporting evidence in the form of medically acceptable clinical or laboratory diagnostic techniques for these conditions.  Similarly, I find that the ALJ's conclusion that Mr. Brinkey's medically determinable impairments of anxiety disorder with agoraphobia and dependent personality disorder were not severe was supported by substantial evidence in the record.  Although the Mr. Brinkey emphasizes the "*de minimis*" nature of his burden, I am not persuaded by an argument that merely reminds the Court of the standard.  Instead, I am persuaded by the Commissioner's arguments—as further explained below—that Mr. Brinkey failed to meet his burden because he failed to show "that his impairments would have more than a minimal effect on his ability to do basic work activities." *Williams*, 844 F.2d at 751.

**B. Medical Opinion Evidence.**

Mr. Brinkey also argues that the ALJ failed to follow agency policy and base her findings on substantial evidence, and that she instead substituted her lay opinion for the medical expert opinions in the record when she found that Mr. Brinkey did not have a severe impairment. ECF No. 13 at 12. Mr. Brinkey argues that "[a]ccording to the opinions of every medical professional that reviewed his file or examined him, Mr. Brinkey's impairments have more than a minimal effect on his ability to perform these [basic work] activities and they are therefore severe under the regulation." *Id.*

Although not directly disputed in this appeal, Mr. Brinkey's early psychological reports from high school provide relevant context for the discussion herein of later medical opinions. As such, they merit a brief discussion here. Mr. Brinkey's record contains reports from psychologists, a school social worker, and a consultant for the learning disabled in relation to Mr. Brinkey's special education certifications. *See* R. 284–307. Of note, psychologist Christian Barrett examined Mr. Brinkey in 1986 and 1987, and a school social worker examined him in 1987. R. 284–87, 302–04, 305–07.

Dr. Barrett's 1986 review—when Mr. Brinkey was a junior in high school—indicated that Mr. Brinkey was functioning in the "'Borderline' range of intelligence." R. 304. Mr. Brinkey exhibited "[s]ignificant deficits" in certain tested areas, but Dr. Barrett noted that he demonstrated improvement in his "social and emotional response" and no longer "exhibit[ed] symptoms of serious instability." *Id.* The following year Dr. Barrett found that although Mr. Brinkey appeared insecure "with feelings of vulnerability and weakness," "[h]is attitude, task orientation, and self confidence appear to have made considerable improvement since the last evaluation." R. 286–87. By that time, Mr. Brinkey was "functioning within the Dull Normal

range of intelligence," and Dr. Barrett found that "[n]o significant learning disabilities are present." R. 284. Mr. Brinkey was "integrated full time into the regular education program" and "no longer appear[ed] to need intensive Special Education services," although Dr. Barrett recommended that he remain on the teacher consultant case load for "support when needed." *Id.* Similarly, the school social worker observed in 1987 that Mr. Brinkey "appears to be functioning much better," and was "said to be progressing very satisfactorily academically" in his general education classes. R. 306. He was deemed to "have made substantial progress emotionally" and "appears to be more comfortable with people and is able to relate to them in a much more positive, appropriate manner." R. 307.

### i. *Dr. Thomas Graves' Opinion.*

After these 1986 and 1987 reports, Mr. Brinkey's record contains no medical records until February 2014, when Dr. Thomas Graves, a physician who saw Mr. Brinkey on one occasion "to discuss social security disability," opined in a letter "To Whom It May Concern" that Mr. Brinkey was "not capable of working in any type of employment . . . owing to both his autism, as well as emotional impairment." R. 319–20. It appears from the visit notes that Dr. Graves' only basis for Mr. Brinkey's autism diagnosis came from Mr. Brinkey's mother, who provided an account of her son's "longstanding history of mental illness, diagnosed with Autism and severe emotional impairment." *Id.* at 320. Dr. Graves' opinion does not indicate who made the initial diagnoses of autism or emotional impairment on which the doctor apparently relied for his findings.

A subsequent agency reviewer who made Mr. Brinkey's initial disability determination noted that Dr. Graves had not done any testing and had only met Mr. Brinkey "for one short examination"; as a result, the reviewer gave Dr. Graves' report "no weight" and noted that he

8

had opined on issues "reserved for the commissioner." R. 101. The ALJ similarly found that Dr. Graves' opinion lacked support, and she observed that the doctor noted only "characteristics consistent with autism, withdrawn, but answers questions appropriately." R. 24, 321. As a result, the ALJ gave Dr. Graves' opinion "[l]ittle weight." R. 28.

Although Mr. Brinkey acknowledges that Dr. Graves' opinion about his employability is an issue reserved for the Commissioner, Mr. Brinkey nonetheless argues that Dr. Graves' "diagnostic conclusion" was "a medical judgment based on his medical expertise," and that it was supported by Dr. Graves' notes that "Mr. Brinkey rocked and banged his head as a child, still lived at home with his parents, and spent his time alone." ECF No. 13 at 16. Mr. Brinkey acknowledges that aside from this account of Mr. Brinkey's impairments, "he had an otherwise normal psychiatric/emotional evaluation in that visit." *Id.* Nevertheless, Mr. Brinkey accuses the ALJ of "reassessing" the diagnosis to find that Mr. Brinkey did not have autism, and thereby impermissibly substituting her lay opinion for that of the medical expert. *Id.* I disagree.

Contrary to Mr. Brinkey's argument, the ALJ did not substitute her lay opinion for Dr. Graves' opinion, but instead she weighed the doctor's opinion—as she is required to do—based on her conclusion that his opinion was not supported by the evidence and was inconsistent with the longitudinal record. *See* 20 C.F.R. §§ 404.1527(c), 416.927 ("The more a medical source presents relevant evidence to support a medical opinion," "[t]he better explanation a source provides for a medical opinion," and "[t]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ's finding that Dr. Graves' opinion about Mr. Brinkey was based only on "a prior report of an unknown source or origin" and that the doctor had scant evidence on which to make his diagnosis is supported by the record. R. 24. Aside from Mr. Brinkey's mother's description of Mr. Brinkey's alleged

9

impairments as well as the doctor's conclusory statements that Mr. Brinkey exhibited "characteristics consistent with autism," and was "unable to engage properly, and seems very emotionally guarded and unavailable," there is little support provided for Dr. Grave's opinion that he "concur[red] with these diagnoses" of "austism [sic] as a child, and severe emotional impairment." R. 319–21.

In order for an impairment to be considered medically determinable, the diagnosis must be based on "medically acceptable clinical or laboratory diagnosis techniques," which "simply indicates that a claimant's disability must be diagnosed through the use of a technique, either clinical or laboratory, that has been accepted by the medical community." *Sisco v. U.S. Dep't of Health and Human Services*, 10 F.3d 739, 744 (10th Cir. 1993). In this case, as the ALJ observed, there is no indication from Dr. Graves' notes or report that he used any particular technique to diagnose Mr. Brinkey with autism and severe emotional impairment; instead he seems to have largely taken Mr. Brinkey's mother at her word. *See* R. 28.

The ALJ further points out the contrary evidence in the record, including that Mr. Brinkey had showed great improvement in high school, that Mr. Brinkey's mother never sought services for him, and that Mr. Brinkey was cooperative and responsive during his consultative examination and hearing. R. 24. As such, the ALJ properly found that not only was it not clear how Dr. Graves had arrived at his opinion, but also that his opinion was inconsistent with the record as a whole. *Id.* As a result, it was proper for the ALJ to find that this opinion did not support a medically acceptable diagnosis of autism. *Id.*

    ii. <u>Dr. Mac Bradley's Opinion</u>.

In addition to Dr. Graves' opinion, the ALJ also considered the medical opinion of psychologist Dr. Mac. Bradley, a consultative examiner who examined Mr. Brinkey and

10

reviewed the opinions in his record in August 2014. R. 323. According to the Commissioner, "Dr. Bradley's examination findings were essentially normal." ECF No. 14 at 9. Indeed, Dr. Bradley concluded that "I do not think Mr. Brinkey is intellectually impaired, and he did not appear to have significant impairments in memory or other cognitive functioning." R. 327. Dr. Bradley also provided his opinion about Mr. Brinkey's ability to perform "basic work activities" as outlined in Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985). R. 25, 327–28. Specifically, Dr. Bradley opined that Mr. Brinkley was not impaired in his ability to make reasonable judgments regarding simple or complex work-related decisions or in his ability to understand, remember, and carry out simple or complex instructions. R. 327. Dr. Bradley determined that Mr. Brinkey was mildly impaired in his ability to sustain concentration and to persist in completing routine work-related tasks, as well as to perform daily work-related tasks at an adequate pace. *Id.* The doctor opined that Mr. Brinkey's ability to respond appropriately to supervisors, co-workers, or others in a work setting was mildly impaired, whereas his ability to relate to the public, co-workers, and supervisors was markedly impaired. *Id.* at 327–28. His adaptability and flexibility to changes in routine, as well as his ability to maintain employment, were deemed moderately impaired. *Id.* at 327–28.

The ALJ gave "[s]ome, but not great weight" to Dr. Bradley's opinion. R. 28. She noted that the doctor's findings of a "lack of deficits" in certain areas and "no more than mild limitations" in others were consistent with Mr. Brinkey's performance on mental status examination tests, his prior IQ testing, his consultative evaluation, and his most recent educational evaluation performed as an adult. *Id.* However, with respect to Dr. Bradley's findings of moderate or marked difficulties in Mr. Brinkey's adaptability and flexibility as well as his ability to relate to the public, co-workers, and supervisors, the ALJ observed that "it is

unclear what Dr. Bradley used as a basis" of his findings. *Id.* She highlighted contrary evidence in the record, including Mr. Brinkey's ten-year work history in which "he was able to obtain and maintain substantial gainful activity." *Id.* She also pointed to the lack of evidence in the record supporting marked limitations in social functioning, instead noting that Mr. Brinkey was cooperative and appropriate with Dr. Bradley, and withdrawn but appropriate with Dr. Graves and at his hearing. *Id.* Moreover, the ALJ noted that Mr. Brinkey himself testified that he had no problem with his co-workers when he was employed, and that there has been no medical evidence of a decline in his mental status since that time. *Id.* at 29.

Mr. Brinkey disputes the ALJ's reasoning with respect to Dr. Bradley's opinion, arguing that contrary to her contention that it was "unclear what Dr. Bradley used as a basis of his moderate rating of difficulties with adaptability," Dr. Bradley's results were in fact based on tests and the exercise of the doctor's professional expertise. ECF No. 13 at 13–14. Mr. Brinkey also argues that it was improper for the ALJ to reject Dr. Bradley's opinion that Mr. Brinkey has a marked limitation in interacting with supervisors, co-workers, and the public because he was able to cooperate and relate well to his doctors and in the hearing. *Id.* at 14. Mr. Brinkey cites *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1082 (D. Kan. 1990) in which the court rejected the ALJ's conclusion that because the "plaintiff demonstrated no memory or concentration problems at the hearing" and was able to testify without difficulty, noting that this "is the psychological equivalent of the 'sit and squirm' test." *Id.* Finally, Mr. Brinkey argues that because the ALJ did not indicate why she rejected Dr. Bradley's opinion that Mr. Brinkey would have moderate difficulties maintaining employment, her decision was unreviewable on that point. *Id.*

Despite Mr. Brinkey's contentions, the ALJ's reasoning was supported by substantial evidence. The ALJ sufficiently explained her grounds for assigning less weight to Dr. Bradley's

12

findings of moderate or marked impairments since these were incongruous with the longitudinal record as a whole. Although one could come to a different conclusion about whether Dr. Bradley's findings supported the scope of his opinion, that "does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). This Court cannot "reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001) (citations omitted). Moreover, I disagree with Mr. Brinkey's argument that he was subjected to the so-called "sit and squirm" test when the ALJ compared his demeanor at the hearing and with his doctors to Dr. Bradley's findings. With respect to the sit and squirm test, he Tenth Circuit has clarified that it is inappropriate for an ALJ to reject assertions of disabling pain "on the basis of demeanor alone" when the pain is corroborated by uncontroverted evidence. *Laferry v. Shalala*, No. 93-7069, 25 F.3d 1057, 1994 WL 170793, at *3 (10th Cir. May 5, 1994) (unpublished). However, where evidence of disability is not uncontroverted, and the ALJ engages in an extensive and thoughtful analysis, as in this case, her consideration of the claimant's demeanor is appropriate. *Id.* As a result, I find that the ALJ properly considered Mr. Brinkey's demeanor in support of her consideration of Dr. Bradley's opinion. In sum, substantial evidence supports the ALJ's decision to assign "[s]ome, but not great" weight to Dr. Bradley's opinion.

### iii. Dr. James Wanstrath's Opinion.

Dr. James Wanstrath is a non-examining state agency medical consultant who reviewed the evidence in the claim file and found that Mr. Brinkey's anxiety disorder, organic mental disorder, and personality disorder were severe. R. 108–10. Dr. Wanstrath further opined about Mr. Brinkey's ability to perform work-related activities, and he found moderate limitations in the ability to understand, remember, and carry out detailed instructions, in the ability to complete a

13

workday without interruptions and to perform at a consistent pace, as well as in the ability to interact appropriately with the general public. R. 112–13. Otherwise Dr. Wanstrath noted that Mr. Brinkey was not significantly limited in his work-related abilities. *Id.* The doctor concluded that Mr. Brinkey could follow simple instructions, sustain ordinary routines and make simple work-related decisions, respond appropriately to supervision, and deal with changes in a routine work setting, but needed minimal interaction with the general public. R. 114. The ALJ gave "little weight" to Dr. Wanstrath's opinion, noting that his conclusion was "inconsistent with the longitudinal evidence of record." R. 29. In particular, the ALJ cited Mr. Brinkey's educational records indicating that his attention and concentration were only "mildly below average" and that he was improving in social functioning over time; Mr. Brinkey's work history of ten years of substantial gainful activity; and the appropriate interactions and competency he displayed at his consultative evaluation, hearing, and examination with Drs. Graves and Bradley. *Id.*

Mr. Brinkey argues that the ALJ quoted selectively from Mr. Brinkey's high school report from Dr. Barrett and ignored other indications from that report that Mr. Brinkey had more serious issues. *Id.* As a result, Mr. Brinkey accuses the ALJ of "impermissibly cull[ing] isolated bits from the record to support a specific conclusion," which means that her finding was not based in substantial evidence. ECF No. 13 at 17 (citing *Kirby v. Astrue*, 568 F. Supp. 2d 1225, 1235 (D. Colo. 2008)). Mr. Brinkey also disputes the ALJ's citation of his normal interactions with the doctors and ALJ for the same reasons noted above with respect to Dr. Bradley's opinion. *Id.* Additionally, though the ALJ also cited Mr. Brinkey's work history as part of the longitudinal evidence of record, Mr. Brinkey disputes her account of this history and contends that it "does not detract from Dr. Bradley's [sic] opinion."

I am not persuaded by Mr. Brinkey's arguments against the ALJ's treatment of Dr. Wanstrath's opinion. Unlike *Kirby*, where the ALJ had provided "an inaccurate statement of the record before the ALJ" by selectively citing parts of the record and ignoring contradictory evidence, here the ALJ's summary of the longitudinal evidence of record in this case is supported by substantial evidence. 568 F. Supp. 2d at 1235. The ALJ in this case notes, for example, that Mr. Brinkey's educational examinations "indicate an improvement in social functioning as he was not withdrawn and more open and animated . . . [h]e became more appropriate in his social responses prior to leaving school." R. 29. Though Mr. Brinkey faults the ALJ for not citing certain evidence—for example, the recommendation in his educational records that he work with a teacher consultant because of his fragile ego—such statements in the record do not contradict the ALJ's summary that he showed improvements over time in school. ECF No. 13 at 17. As noted above, even if a court could draw a different conclusion from the record than an administrative agency did, the agency's findings may still be supported by substantial evidence. *Lax*, 489 F.3d at 1084. Because there is substantial evidence to support the ALJ's conclusion that Dr. Wanstrath's opinion was inconsistent with the record as a whole, I will not overturn the ALJ's assessment.

Finally, Mr. Brinkey disputes the ALJ's reassessment of the four "Part B" criteria of functional limitations, which diverged from Dr. Wanstrath's assessment of these criteria. ECF No. 13 at 18. Dr. Wanstrath had found that Mr. Brinkey had mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning and in concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. R. 110. While the ALJ concurred that Mr. Brinkey had only mild restrictions in his activities of daily living and no episodes of decompensation of extended duration, she determined unlike Dr.

Wanstrath that Mr. Brinkey had only mild limitations in social functioning and concentration, persistence, or pace. R. 29–30. In concluding that Mr. Brinkeys' social functioning was only mildly limited, the ALJ noted that he enjoys using social media websites and communicating with his girlfriend, that he has had other girlfriends and has been engaged, and that he goes out once or twice a week. *Id.* The ALJ also noted that Mr. Brinkey gets along well with authority, had no problems with other employees in his previous job, and responded appropriately in evaluations and at hearing. R. 30. With respect to her finding that Mr. Brinkey's concentration, persistence, and pace were only mildly limited, the ALJ noted that in high school his attention and concentration were deemed only mildly below average; he showed appropriate attention and concentration in his consultative evaluation in 2014, had no looseness of associations, flight of ideas or racing thoughts, tangential or circumstantial thinking, and demonstrated adequate long and short-term memory. *Id.*

Mr. Brinkey argues that the ALJ did not rely on substantial evidence in making these findings. Instead, with respect to the ALJ's finding about his social functioning, Mr. Brinkey contends that social media is merely "virtual" reality "and is not the equivalent of interaction in the real world, or in particular interaction with supervisors, co-workers, or the public in a workplace." ECF No. 13 at 19. Mr. Brinkey also disputes his relationship history, noting that "these relationships did not go well, and one, in fact, resulted in his financial exploitation and bankruptcy." *Id.* With respect to her finding of only mild limitations in concentration, persistence, and pace, Mr. Brinkey argues that the ALJ "selectively cited" from Dr. Barrett's and Dr. Bradley's reports, that she relied on findings that were "not elements of his impairments," and that she "cite[d] examples of tests results that contradict her findings." *Id.*

I am not convinced by Mr. Brinkey's arguments. The ALJ's finding of only a mild limitation in Mr. Brinkey's social functioning is supported by substantial evidence in the record. Mr. Brinkey himself indicated that he "got along fine" with authorities and has never been fired or laid off as a result of problems getting along with people. R. 239. He testified that "[i]t was okay" working with other people at the toy train factory, and that he never got into arguments with anyone there. R. 46. Moreover, the fact that Mr. Brinkey's romantic relationships have been dysfunctional or exploitative is not unique to someone with more than marked limitations in social functioning; many highly functioning adults experience the same unfortunate luck in love.

Similarly, the ALJ's finding that Mr. Brinkey had only mild limitations in concentration, persistence, and pace is supported by substantial record evidence. His high school records indicate that he was functioning within the "Dull Normal range of intelligence," which was "considerably higher" than in previous testing, and that he had no significant learning disabilities. R. 287. His "attention and concentration to detail" were only mildly below average, and he "no longer appears to need intensive Special Education services." R. 286–87. There is no indication that Mr. Brinkey's mental status declined since high school; instead he held down a steady job for ten years after school. Though Mr. Brinkey contends the ALJ cited selectively from reports in the record, he does not point to any contradictory indications in those reports, nor does the Court find any such contradictions with respect to this finding. Finally, Mr. Brinkey does not explain how his memory test results contradict the ALJ's findings that Mr. Brinkey performed relatively well. Because the ALJ's finding about these two functional areas are supported by substantial evidence, there is no reason to overturn the ALJ's finding that Mr. Wanstrath's opinion with respect to these functional areas merited little weight.

**C. Credibility of Mr. Brinkey's and His Mother's Testimony.**

Last, Mr. Brinkey disputes the ALJ's finding that his and his mother's statements regarding his limitations were not credible, arguing that the ALJ failed to support her findings about his and his mother's credibility with citations to the specific factors she considered. ECF No. 13 at 20. The ALJ found that Mr. Brinkey's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely credible for the reasons explained in this decision." R. 26. With respect to his mother's statements, the ALJ noted that "little weight is given to Mrs. Brinkey's reports." R. 28.

When assessing a claimant's subjective complaints of pain and other symptoms, an ALJ must consider the objective medical evidence that may correlate with the symptoms and other available evidence, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment other than medication; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning her functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[2] "When the ALJ finds the plaintiff incredible, he must make specific findings and state his reasons for disbelief." *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990).

With respect Mr. Brinkey's mother's testimony, information from non-medical 'other sources,' including parents, cannot establish the existence of a medically determinable

---

[2] This ruling was overruled by SSR 16-3p on March 16, 2016. 2016 WL 1119029 (March 16, 2016). Since the ALJ's decision was issued in February 2016, SSR 96-7p governs the ALJ's decision.

18

impairment," but may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 2006-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). In considering evidence from non-medical sources, it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* at *6.

In support of her finding that Mr. Brinkey's and his mother's testimony about the intensity, persistence, and limiting effects of Mr. Brinkey's symptoms was not supported by the record, the ALJ cited the following facts, among others: Mr. Brinkey has not seen a counselor—or sought any treatment at all—since middle school, and he was withdrawn from counseling at that time for reasons unrelated to the effectiveness of the services; Mr. Brinkey's attitude, task orientation, and self-confidence improved significantly during high school; Mr. Brinkey worked for ten years after high school with "no neutral reports to confirm he was in a structured or sheltered setting;" and Mr. Brinkey presented appropriately at his consultative examination and hearing. R. 26–27.

Mr. Brinkey disputes the ALJ's conclusions drawn from this evidence, arguing in contrast that the failure to seek treatment demonstrates dysfunction rather than the lack thereof. ECF No. 13 at 20. He contends that this factor is a sign of his "extremely isolated life," and when considered in conjunction with his and his mother's testimony that he is unable to care for himself, indicates that "he would have difficulty recognizing or accepting the need for any treatment." *Id.* at 20–21. Similarly, Mr. Brinkey contends that his mother only withdrew him from counseling "when she became suspicious of the counselor's activities and appearance," and that this action was therefore an effort to protect her son rather than a reflection of "a lack of need for services." *Id.* Finally, Mr. Brinkey argues that by noting the fact that his parents did

19

not seek services for him, the ALJ has tacitly conceded that "[i]f, even as a grown man, he is dependent on his parents to find services for him, then he is has [sic] a severe impairment." *Id.* at 21.

In this case, I am satisfied that the ALJ has properly considered the credibility of Mr. Brinkey's and his mother's statements with reference to their opinions' consistency with other evidence in the record. Mr. Brinkey would have me reweigh this evidence and come to a different conclusion, which the Court may not do. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). I am satisfied that the ALJ properly considered the record as a whole in finding that Mr. Brinkey's and his mother's testimony about the severity of his impairments was not credible. As such, I decline to overturn the ALJ's decision on these grounds.[3]

## ORDER

Because substantial evidence supports the ALJ's determination that Mr. Brinkey was not disabled, I AFFIRM the Commission's order denying social security benefits to Mr. Brinkey.

DATED this 16th day of March, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[3] The ALJ argues in the alternative that even if it was error to find Mr. Brinkey not disabled at step two on the grounds that his disability was not severe, such error was harmless and does not require remand. ECF No. 14 at 13. Because I find that the ALJ did not err in her finding that Mr. Brinkey was not disabled at step two, I decline to reach this argument.